Good morning, Your Honor. My name is Scott McIntosh. I'm with the Department of Justice. And I'm appearing today on behalf of the Department of Justice and the Office of the Director of National Intelligence, the object of the FOIA request in this case. As the appeal reaches this court, there are two types of information that are at issue in this FOIA case. The first is information about the identity of the individuals who communicated with ODNI and the Department of Justice on behalf of telecommunications companies. To make it clear, at least for me, why don't we talk in terms of exemptions? My understanding is we're dealing here with exemptions 3, 5, and 6, correct? That's correct, Your Honor. Exemptions 3 and 6. Not 5. I'm sorry. There are three exemptions at issue here, 3, 5, and 6. Exemptions 3 and 6 are being invoked for the same universe of information, and that is the identities of the representatives of telecommunications companies who contacted and communicated with the Department of Justice and ODNI regarding the proposals for FISA legislative immunity. The exemption 5 concerns intra-branch, intra-executive branch materials as to which the government has asserted various privileges. And 6 is personal privacy. 6 is personal privacy. Exemption 3, in this case, involves intelligence sources and methods, and 6 involves personal privacy. So in some instances, the government claimed both 3 and 6 as to some documents, correct? As a general matter, Your Honor, the information that we're now talking about, these identities of the telecommunications companies' representatives, are being withheld both on the basis of 3 and 6. So if either one applies, you win. That's correct, Your Honor. I think, at least if you look at the district court's original opinion here, that's a point that I'm not sure the district court grasped, because the district court noted that we had raised Exemption 3 as to this material, noted further that, as the district court understood it, that wasn't being contested by EFF, and then proceeded to go on to Exemption 6 without any further discussion of Exemption 3, ruled against us on Exemption 6, and ordered disclosure. You correct me if I'm wrong. I have the impression from reading the district court opinion that the district court seemed to have assumed that the challenges under exemption, the claim of exemption under Number 3, that the Frontier Foundation did not challenge that. That's — that is correct, Your Honor. I think I'll let EFF's counsel elaborate on exactly what their position was. As I understand it, they stated as a general matter that they were not contesting the withholding of materials under Exemption 3. Having said that, I think they said, not necessarily at any great length, they did say that they didn't think that the logic behind that exemption applied to the identities of these representatives. This is what I found a bit confusing about the district court order, because if the district court was correct that they were not challenging 3, then the documents as to which 3 was claimed should have been allowed to be withheld, right? That's correct, Your Honor. Again, I probably should let EFF explain its — what submission it thought it was making to the court. But certainly, the district court understood them not to be contesting Exemption 3 withholding. On the other hand, it apparently did not, because it apparently assumed that there was no challenge on 3. It did not go through an examination under 3, correct? That's exactly correct, Your Honor. We brought this problem to the Court's attention when we followed our reconsideration motion and didn't — well, the Court can see for itself what the response was, but in essence, the Court said you're just repeating arguments you've already made. So it's somewhat difficult to understand what the Court's thinking was on this. Is it your — is it the government's position that we should send this back to the district court and, in effect, produce a Vaughan index with respect to the exemptions under 3? No, Your Honor. I don't think — the Court certainly could send it back under Exemption 3 to get essentially an explanation, not so much a Vaughan, but an explanation by the Court of its reasoning, whatever it might be. In our view, that's not necessary, simply because the nature of the controversy between the parties on Exemption 3, I think, is more or less a purely legal argument that lends itself to resolution sort of in a wholesale fashion rather than on a kind of retail, document-by-document basis. What you're saying is, as a matter of law, on the record, the identity of these people should and must be withheld as a matter of law under Exemption 3. That's correct, Your Honor. The chain in the reasoning, I think, is pretty straightforward. Why don't you tell me what that is? Yes. If you know who the individual representatives are, you know who the companies are. That's, I don't think, in any dispute. It's easy to figure out who these people are representing. If you know — and this is where we get to the declaration of the Director of National Intelligence — if you know which companies were engaged in communicating with the Federal Government, if you can match up that information with the kind of contents which have already been disclosed of those communications, you know the volume of the communications, the nature of the communications, and which companies were involved, the Director of National Intelligence concluded that that will support inferences by the public at large and, more importantly, by our adversaries, inferences about which companies were actually engaged in providing assistance, intelligence-gathering assistance, to the Federal Government. But that's hardly a secret, is it? Which is hardly a secret, Your Honor? About which telecommunications companies cooperated with the Government? Oh, absolutely, Your Honor. That's the predicate not only of — that's really the predicate of the statute, the immunity statute that you've got underlying this case. If you look at the structure of the statute that Congress passed — this is the statute that provides for certification by the Attorney General — the statute was specifically designed to allow the Attorney General to certify either that one or more types of assistance had been provided or that no assistance had been provided. The Attorney General doesn't have to say which it is. He just has to certify that one of those things is true. And the reason the statute is set up that way is because Congress wanted to make it possible for the certification to go into effect and for these cases to be dismissed without the Attorney General, without the United States ever identifying publicly which companies did or didn't provide assistance here. Now, has there been speculation? Have there been press articles? Have there been, you know, reports out there? Sure. Absolutely. There's at least one CEO of a telecommunications company that announced publicly that that company did not cooperate, right? In one respect, yes, Your Honor. But that doesn't answer the question we have here. There's been no acknowledgment by the United States as to whether any company, any particular company, provided any particular kind of assistance in any of the intelligence activities that have been alleged in the underlying multidistrict litigation. Including AT&T? I thought that was an open admission by AT&T. No, Your Honor. I think the allegation, and this isn't so much less in this case than in the Hefton case, declarations were introduced in the Hefton case by an AT&T employee in which he offered to essentially speculate that AT&T had provided certain kinds of intelligence gathering. That was in El Haramin, right? It may have been in that as well. It certainly was in Hefton. But in any event, all of those, that declaration, which isn't in the record in this case, by the way, but that declaration itself consists essentially of hearsay on his part, speculation on his part, inferences that he drew. Even in Hempting, the district court didn't rely on that at the summary judgment stage. Some of the people who engaged in the lobbying were professional lobbyists, right? AT&T filed lobbying reports in the Lobbying Disclosure Act, indicating that lobbying took place. That's correct, Your Honor. How is that subject to withholding? Well, what we know from the… We're talking about people who walk into a senator's office and sit down and say, I'm Sam or Samantha Smith from the XYZ law firm, and my client is AT&T or whatever, and I'm here to urge you to vote for immunity under the revisions and amendments to FISA. What we know from the Lobbying Disclosure Act reports, and I should emphasize that I think the only ones that anyone's identified are AT&T reports, is that AT&T did engage in lobbying, both with Congress and the Executive Branch, on the immunity issue. But if the information that's sought here is disclosed, it would be possible to assemble a much more extensive picture of the nature of that activity, the nature of the communications that may have taken place,  If you know, let me just, if I can give an example, I'm trying to discuss this in hypothetical terms. If one were to look at sort of behind the veil here and see that two companies, A and B, communicated with the government regarding the Executive Branch, regarding this immunity issue. One of them was engaged in lengthy, continuous, ongoing discussions, a lot of back and forth, great deal of detail and so on. The other, it was a very cursory, brief, you know, a couple of communications, you know, pretty much pro forma. I think that's going to, that would tend to lead one to draw some inferences about who has more at stake here, which of those two companies had more on the line, and which of those companies, therefore, was more likely to actually have engaged in some kind of conduct  to liability in that large body of cases. So... Let me ask a question that relates to the general handling of these kind of cases. And for the purpose of my question, to focus on the way the district court dealt with Exemption 6. Yes, Your Honor. Which is that it examined the information, did some weighing of personal privacy versus the public right to know, and came to the conclusion, and whether one agrees with that conclusion or disagrees with that conclusion, the record is there for us as an appellate court to review it and make, hopefully, a sensible determination about that. That doesn't appear to be the case with respect to Exemptions 3 and 5, which you've properly noted have some overlap. And how does it help send a message to district courts, for lack of a better description, to do this correctly at the onset so that we have a full blossomed record upon which to make a decision? And this relates to the question of whether we should decide the controversy with respect to 3 and 5 here or send it back to the district court to do the job it should have done in the first place. I mean, certainly you could send both 3 and 5 back, although I would emphasize, Your Honor, that since 6 is here, and since you're going to be called on one... If one were to rule in the government's favor on 6, there's nothing to send back on 3. Understand that. But putting that to the side. Well, is that really true? Because since 6 doesn't apply, even though EFF didn't pursue 3, the reality is there is still a claim with respect to these things that was never dealt with by the district court. Doesn't the district court have to go through and determine on an individual basis whether documents requested fall under 3 if 6 is no longer involved? Well, I'm not sure what you mean, Your Honor, by 6 no longer being involved. I'm sorry, 3 and 5. Those are dealing with different kinds of information. For example, there might be an e-mail message from someone in the Department of Justice to someone in the office of the Director of National Intelligence. Which is clearly interagency. Which is clearly interagency. And... If it qualifies for withholding on that, schools out. Correct. But that wasn't done here. That's absolutely right, Your Honor, and that's why we think that certainly on 5 there needs to be a remand. But the point I wanted to make about the relationship between these different pieces here is within that e-mail there might be identifying information about a particular telecommunications company representative and that would be separately withheld or withholdable under 3 and 6. And if the court were to decide that it was probably withheld under 6, that's the end of it as to that piece of the information. But to return to Your Honor's question, certainly you could remand both on 3 and on 5. It's... It seems to us that 3 is a sufficiently clean legal issue that it lends itself to resolution here in a way that 5, which is much more sort of fine-grained, doesn't. I assume you have these cases sometimes in the District of Columbia? Yes, Your Honor. That arise out of the district court there. Yes. And my impression is that that court does a very able job of dealing with Vaughn indexes and going down item by item. Yes. I mean, I do think in Canada both on 3 and 5 the district court here just dropped a stitch. Okay. Now, where you're confusing me with 3 and 5 again, 3 and 6 dealt with the individual... Correct. ...people. 5 deals with correspondence, as I understand. It deals with a number of different kinds of materials... Under the... ...as to... Under those Vaughn indexes? These are all materials that are discussed in the Vaughn indexes. It's materials as to which the government has asserted one or more privileges under Exemption 5. For example, the deliberative process privilege... I understand that. And do I understand that you're saying as to Exhibit 5, that's never been decided and that's got to be remanded under any circumstance? Yes. The district court decided a threshold question under Exemption 5. It decided or proceeded as if none of these materials were interagency or intra-agency. But they are. That's clearly incorrect as to some of these materials. Some of them clearly are. Yes. That's certainly true. I don't think, as to some of them anyway, that's not, I think, in dispute. And because the court, you know, threw the baby out with the bathwater, as it were, it never engaged in an analysis of the privilege questions that have to be worked through under Exemption 5. So what did the court decide on Exemption 5? Anything? Yes. On Exemption 5, the court decided that or effectively decided that none of the materials were qualified. None of the materials were qualified because none of them, in the court's view, were satisfied the interagency, intra-agency requirement. And the court's clearly wrong on that. That's correct, Your Honor. And that's why that has to go back under any circumstance. That's correct, Your Honor. Does your opponent concede that? No. Well, I think my opponent concedes that some of the information was clearly inter- or intra-agency. I think we disagree with each other about part of the information, which is communications between these agencies and the White House. Our view is that that qualifies, under the Supreme Court decision in Mink, as inter- or intra-agency communication. I see. Okay. So now, really, from your standpoint, I want to understand where we are. You're contesting 6 as erroneous. But then you're saying, even if the court is okay on 6, that as a matter of law, on number 3, that information is not to be disclosed. That's correct, Your Honor. So, and your position is, we should decide that rather than remand it. I think the exemptions, you must, I think, decide the Exemption 6 issue. The Exemption 3 issue lends itself, I think, to disposition by this Court in a way that the complexities of 5 don't. But it certainly is the case that you could remand that as well, if you were so inclined. One other question. Yes. What, as I understand Exemption 6, the Court sort of balanced the privacy interest with what the public ought to know and how serious this was and so forth. What is your response to your claim of error by the District Court on the application of Exemption 6? In a sentence, Your Honor, it's the principle recognized by the courts that something beats nothing. There is a privacy interest here. The District Court itself recognizes there's a privacy interest on the part of these individuals in maintaining the confidentiality of their involvement. So you're saying as long as there's a privacy interest, how important it is is not that important. It's just whether there's a privacy interest. Well, the question, there has to be a balancing. But in order to have a balancing, there's got to be something of consequence on the other side of the scale. And our basic submission on that score is there isn't. There's no particular public interest in knowing that Mr. A or Mr. B was the one communicating a particular message here, especially when the message itself has been disclosed. To the extent that these communications themselves have been turned over, that surely satisfies whatever public interest there may be claimed to be in understanding the role of this, you know, call it lobbying, calling it what you will, these communications in influencing the way this immunity process played out. You're down to about 20 seconds. If I could save the last 21 seconds for rebuttal, Your Honor, plus whatever else I will get by the Court's grace. We'll give you a little time for rebuttal. Thank you, Your Honor. Thank you. Thanks for coming in today. Ms. Hoffman. Good morning. Good morning. May it please the Court, my name is Marsha Hoffman and I represent the Appalee, the Electronic Frontier Foundation in this case. This case is about the government's attempts to hide the identities of individuals who lobbied for a law to give telecommunications companies legal immunity for their alleged participation in a legal activity. We start with a little framing here. Does the foundation... Did the foundation intend to not contest Exemption 5? Three. Three, excuse me, three. Three. Your Honor, EFF never intended to concede that the identities of lobbyists pursuing interests on behalf of the telecoms are immune under any FOIA exemption. And we agree that the papers below are a little bit confusing on this point. I think after the government filed its opening brief, we had some confusion about the extent of the claim of Exemption 3. But I think it's clear from our papers that at all times, we felt that the identities of the lobbyists who were pursuing changes to FISA were at issue and should not be withheld under the law. I take that as a no. No. Okay. Now, to the extent that the district court assumed that that answer was yes, does that, does Exemption 3 need to go back to the district court? Yes, to the extent the court assumed that. But I read the court's opinion to find that implicitly the government did not meet its burden of showing that Exemption 3 applied. And I don't think that this was an oversight by the court. The government sought leave to file a motion for reconsideration, noting very specifically that the court had not made any findings about Exemption 3 in their view. And the court refused to reconsider the issue. So I think that it's pretty clear that this is a conclusion that Judge White meant to reach. Okay. Now, you're in the position of defending what the district court did. Sometimes that's enviable, sometimes it's not. It is correct that in their listing of their claims for Exemption 5, which is interagency communication, that their Vaughn Index shows some documents which are clearly interagency, aren't they? Yes, Your Honor, we agree with that. I agree with you that there are some documents here that clearly meet the definition of inter- or intra-agency, and so do qualify for privilege if they meet those privilege tests. But this court can affirm... That's an Exemption 3 exemption, is it not? The interagency communications? That's Exemption 5, Your Honor. Five, okay. Three is the sources and methods. Okay. But the point I wanted to make is that this court can affirm the district court's decision on any basis supported by the record. Even if we conclude that the district court fundamentally didn't do its job on 3 and 5? On 3 and 5 or 3 and 6? 3 and 5. Okay. I'm putting 6 aside for a moment. If you conclude that the district court didn't do its job, I think a remand would be appropriate, but I think that the... What other conclusion could we come to that when the government's Vaughn Index lists, for example, a communication from the Department of Justice to the White House that the district court did its job? I think you could conclude that deciding that that communication didn't meet the threshold is harmless error because it's privileged when you get to the actual privilege analysis. Okay. And I would encourage the court to reach the privilege analyses here. This is a case that has been briefed and heard on an expedited basis largely because, I think, there's a great public interest in this information being disclosed and made public. This is largely because there are four bills pending before Congress right now that would repeal immunity if passed and they are actively being considered by congressional committees. A couple of these proposals have arisen in the course of the debate over renewal of certain Patriot Act provisions and the deadline for Patriot Act renewal is the end of February and so to the extent that this material is going to have any effect on that legislative debate that material has to be made public well before Congress decides whether to pass those bills. Even if it would reveal who cooperated with the government and to what extent? Well, of course. I'm talking about material that the court finds is not properly exempt. I'm talking about material that the public is entitled to. So to the extent that this court should find that any material is exempt from disclosure we understand that we won't receive that material but to the extent that material is still being withheld that the public is entitled to see, that material should be released sooner rather than later. Let me ask you this question. This bothers me. Under Exemption No. 3 the government says if we disclose who the lobbyists are you want to know who the lobbyists are and really I think you want to know who they're lobbying for too, don't you? Yes, Your Honor. Well, doesn't that show contrary to Exemption No. 3 that these firms were involved in gathering sensitive information needed for national security and that it falls right in the middle of Exemption No. 3 and therefore you're not entitled to it? No, Your Honor. I think that the disclosure of the names of the lobbyists would tend to show who's been sued and that's a public fact. We know which companies have been sued. That's the case that's currently before this Court. It's on remand to the district court, isn't it? I believe I was on El Jaramillo. Then I certainly trust your judgment on that one. I don't litigate that case and so I'm not familiar with all of the ins and outs. I don't know anything about that case either. So we're even. The important thing here is that there is a certain standard set out by law in the Sims and the Bermans and the Berman cases that explains what the government has to do in order to withhold material under Exemption 3 as sources and methods. The government Exemption 3 is and I'm sorry for our confusion about this we probably ought to have a big chart that says what 3, 5 and 6 are, but my understanding is that 3 is a claim of withholding because a specific separate statute bars its disclosure. That's correct. Correct. So that's a matter of simply here's the document or class of documents. Here's the statute that the government says prevents its disclosure and either applies or encompasses all or part of the group of documents or it doesn't, right? Well, that's correct. The statute that we're dealing with here is 50 U.S.C. Section 403I. Let me finish my question. Or the follow-up to it. And if it's a legitimate claim under 3 it matters not whether any other exemption applies. If it's a valid assertion of 3, schools out. That's correct. But this is not a valid assertion under 3. Under Sims, what deference do we have to give to the National Security Director in this? The Sims case speaks in terms of great deference but that is not the same as a rubber stamp. This Court should be determining whether or not... How can we, with respect, how can we gainsay what the Director may say if we can't go behind and see the basis on which the decision is made? Your Honor, the public record shows that the material that is attempted to be withheld here is not actually secret. The Lobbying Disclosure Act database contains forms, one example of which is in the record from AT&T, that shows that particular individuals lobbied on behalf of AT&T specifically for statutory immunity. The fact that certain individuals sought immunity on behalf of certain companies is not secret. It is in fact published in a government database. Why are you seeking this then? I mean, just from a common sense perspective, I mean, if you know all of this why are you going through this exercise? I mean, you're basically saying that what the Director indicated is stupid because it's already public but isn't it stupid that you're bringing the action because you're trying to get something that's already public? Your Honor... Is this a game? Oh, no, no, no. No, Your Honor. This is not a game. I didn't think so. So, the reality is either it's public or it's not public. It's not public and you need to have that information so that you can go forward with your litigation, which I assume is the point, and that's one thing. On the other hand, I'm struggling with how we reconcile the enormous deference the Supreme Court says we have to give under Sims if we have no basis for ascertaining whether there's any reason behind the Director's decision. It's a little bit like the state secret doctrine. I mean, basically the government's saying, you know, you can't go there. So, if we can't go there, how then in this case do we gainsay what the Director says under Article 3? Your Honor, there's no case that says that you can't go there. The Director's decision is not unreviewable. You simply have to give deference. No, I understand, but on what basis do we review? What documents do we look at? On what do we base that? The evidence provided by the government is the declaration of former Director of National Intelligence Mike McConnell. That is the only affidavit they've cited before this Court. What do we do with that? We have the declaration there. We look at it. Are we supposed to say he didn't spell it right? Are we supposed to say we think he's wrong, but we don't know on what basis we say we think he's wrong? I think you look at that declaration, and you look at the cases that the Supreme Court and the Ninth Circuit has decided before, and you look at the level of the justifications that they've accepted from the government before. Is there a proper response on the part of the government within the context of FOIA when a group or individual such as your client request a specific group of documents, like who lobbied for this exemption? Is it an appropriate FOIA response for the government to say that information is publicly available? See congressional lobby registration information? Yes, Your Honor. In my experience, I've seen situations like that, where I've requested information, and the government says that information is publicly available. It's available right over here, and you're perfectly entitled to it. Correct. Of course, that's not what the government has said here. The government claims that this is information that could lead one to draw an inference, which may be correct or incorrect, that Their argument is that the government confirming that that's the case leads to an inference which they're not at liberty to disclose. I understand you disagree with that. Well, the government doesn't even say that this would confirm or deny participation in the program. What the government says is that this could lead one to draw an inference that may or may not be correct that could cause harm to the companies. If you look at the affidavit, it doesn't even say that this could cause harm to the government or intelligence gathering or national security. It's harm to the companies. I don't believe that this is the type of information that Exemption 3 and specifically the National Security Act statute is intended to protect. But again, counsel, with respect, I understand your position. You're an able advocate for it. But I just don't see how you solve the question I had about Sims, because both Berman and Sims I think that one of the cases suggests Berman, I guess, says, Indeed, Sims leaves courts only a short step from exempting all C.I.A. records from FOIA. That's the language in Berman. So, I just I'm struggling with how we analyze the director's declaration or affidavit. On what basis do we? We don't have any information that allows us to determine whether he's right or he's wrong. It may be out of whole plot, but that's the same problem we face with the state secret issue. I mean, you can say, well, that doesn't make any sense. You ought to be able to have a district judge examine it in camera and you know what happened with that one. So, help me here. How do we deal with this issue? I just don't understand how we get around the problem. How the district court can do anything with respect to Exemption 3 other than what the government has asked them to do. Sims says that the appropriate standard is whether or not the director believes that this would create an unacceptable risk. Okay. Now, walk me through the declaration or the affidavit and tell me why under that standard we have a basis for saying that the district court blew it with respect to Exemption 3. What page are you looking at, by the way? I am on page 479. ER? ER 479, paragraph 26. This is the only paragraph in the record that deals with this question. The question of whether the telecoms identities, representatives of the telecoms identities have been properly withheld for those who have lobbied for FISA. It's very brief, I think. What does it say? Shall I read it? I'm interested in your analysis as to how we get behind it. Okay. I am aware that the records in this case consist of faxes, letters and email messages between the ODNI and or DOJ and representatives of telecommunication companies about potential FISA amendments. Okay. First of all, this is purely about lobbying, right? This is not about discussing the intelligence program itself or the litigation. This is purely between the agencies and the representatives about FISA amendments. I believe the disclosure of this type of material would allow the public and our adversaries to draw inferences about which companies are assisting us and which are not. Although it is true that companies that are not assisting the government may have contacted us to discuss liability protection due to the fact that they have already been sued for alleged activities. So, I take that to mean that the inferences that they're concerned about people drawing is a step removed here. I mean, they're not They're concerned about people But from a commonsensical perspective, isn't the Director saying, I'm concerned that if this is disclosed people, our enemies, are going to have information that could be harmful to us? Isn't that, in essence, what he's saying? He is saying that people can draw this inference two or three steps removed. I know it's a step removed but isn't the bottom line what I just indicated? Yes, that is the bottom line. And if that's the case under SIMS and Burma, don't we have to defer to that? Your Honor, I don't think so. I feel that he is not saying that this presents an unacceptable risk to national security. But what would he have had to say in order to satisfy EFF on this point? I mean, not that you would want him to satisfy it, but what would he have had to say? I think that a declaration that rises to the correct standard would say this presents an unacceptable risk of disclosure of intelligence. And you don't think he said that, perhaps inartfully? He hasn't said that, Your Honor. He hasn't said that at all. I mean, he has assessed what the risk is, and it is a risk that falls below the standard set in SIMS. So EFF's position is that there are, in effect, terms of art that the government must use in order to assert this exemption, Exemption 3. I think that it's not about terms of art, but levels of actual risk that exist or don't exist. One of the questions that we're dealing with here is the inference. Correct? The government argues that there is an inference from disclosure of this information which would legitimately impact national security. It's the first cousin of people being aware of the exact procedures done for airport security, and Al Qaeda being able to circumvent that in the way that it did on 9-11 and the way they did this this past Christmas. The problem with this record is that the district court didn't deal with that inference at all. Correct? Your Honor, I think the district court implicitly found that the director did not satisfy his burden. Even though it assumed that you had no objection to 3? I think that he found that the director did not support, did not provide the factual support to justify the invocation of the exemption claim. Okay. Alright. I have just a few seconds left. I would like to say just very briefly on the exemption's 5 point. The government is asking you to create an intra-executive branch exemption. The text of the law and the legislative history do not they define an agency very specifically to not include the president or his immediate advisers. And so communications between an agency and those people are not inter or intra agency records that meet the threshold. So you're saying that that information submitted to the White House doesn't come under these exemptions because it doesn't say White House and says intra or inter agency? What I'm saying is that the FOIA is directed at agency records. The White House is not an agency. That's correct. Now, FOIA exemption 5 provides for withholding for inter or intra agency memoranda that would be privileged if one were litigating against the president or his immediate advisers.  if you submit that those materials are disclosed outside that relationship, that inter or intra agency relationship, they lose agency status. Now, there's no question that the records at issue here are agency records. The government has not contended that they aren't. But once these records are shared with the White House, they are no longer eligible to be withheld as inter or intra agency records. Is there a specific finding in the district court opinion on that subject? There is. On the threshold issue, yes. All right. We've allowed you a little over your time. Let's put two minutes on the clock, please. Just a couple of points, Your Honor. Picking up where opposing counsel left off, we're not asking you to blaze any new We're just asking you to do what the Supreme Court did in Mink. In Mink, the Supreme Court held that communications from executive branch agencies to the White House, to the president and his advisers was protected by Exemption 5 and did qualify as an intra or intra Can I ask you one specific question on that? There are things in the Vaughn Index, are there not, that are communications between the Department of Justice and the White House? Correct. It is often the case that those are also that other agencies are involved in them as well. Okay. I understand that. I assume the Foundation agrees that the Department of Justice is an agency. Did the district court make any determination as to whether the White House is or is not an agency? I don't see that in its opinion. The opinion isn't entirely clear in that regard, Your Honor, but again, we think that's settled by Mink and if you look at the D.C. Circuit's decision in Judicial Watch from a few years back, they parsed through it very clearly and cleanly and we think that's the way the Court should go. Getting back to Exemption 3 very briefly, Director McConnell's declaration, I think, speaks for itself. You have been directed to the right parts of the declaration. What I think bears emphasis is the point in Sims that the Director is called on to decide again and again whether, in the Supreme Court's words, seemingly innocuous material creates an unacceptable risk of disclosure of intelligence sources and methods. Let me ask you this question. You know, the government has conceded and given to the agent, to the plaintiff here, a lot of information. I mean, at first the government withheld it and this allowed a lot of information. Is there some possibility that if this case, while we're considering it, or even if it's remanded that there may be an agreement between the parties of more material going to the plaintiffs? Hope springs eternal, Your Honor. I couldn't offer any guarantee that we would ever get to zero in terms of dispute. It's not inconceivable that the dispute could be narrowed further by further efforts. Thank you both for coming in today. Thank you, Your Honor. Very interesting case, well argued, and the Court will stand in recess for the day. Thank you.
judges: Bright, Hawkins, Smith M.